Filed 7/28/26  P. v. Loera CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>GIOVANNIE PABLO LOERA,<br><br>  Defendant and Appellant. | F088619<br><br>(Super. Ct. No. F21904542)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  James Kelley, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Appellant Giovannie Pablo Loera[1] appeals from the judgment of his conviction for one count of committing a lewd act upon a child (Pen. Code,[2] § 288, subd. (a); count 2). He was sentenced to state prison for the middle term of six years.

On appeal, appellant contends his conviction must be reversed because (1) the trial court erroneously admitted testimony regarding the Child Sexual Abuse Accommodation Syndrome (CSAAS) and (2) the standard CALCRIM instruction regarding CSAAS—CALCRIM No. 1193—erroneously informed the jurors they may use the testimony to determine the complaining witness's credibility. In the event we find forfeiture for failure to object below, appellant asserts he received ineffective assistance of counsel.

Finding appellant has not established reversible error, we affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Information*

Appellant was charged by a first amended information with aggravated sexual assault of a child, to wit: sodomy (§ 269, subd. (a)(3); count 1) and committing a lewd act upon a child (§ 288, subd. (a); count 2), to wit: penis to buttocks, arising from an incident that occurred on April 4, 2021.

*Trial Evidence*

The complaining witness was appellant's niece, T.P. On Easter Sunday, April 4, 2021, T.P., then 13 years old,[3] and her immediate family went to her grandmother's house, where appellant, then 30 years old, also lived, for a barbeque and an egg hunt.

---

[1] Throughout the record, appellant's first name is spelled as "Govannie," as well as on the notice of appeal; however, because the abstract of judgment states "Giovannie," we use that name in the caption for this appeal.

[2] All further undesignated statutory references are to the Penal Code.

[3] At the time of T.P.'s testimony, she was 16 years old.

T.P. testified that while the adults were outside hiding the eggs, T.P. and some of her younger siblings were in appellant's bedroom playing. When it was time to start the egg hunt, T.P.'s siblings left the room, but appellant kept T.P. behind, locked the door, and assaulted her. T.P. testified appellant grabbed her, removed her shorts, pushed her against the bed, and inserted his penis into her anus.

T.P. further testified this was not the first time this had happened. She testified to several uncharged acts of sodomy perpetrated by appellant, which occurred prior to the Easter incident, dating back to when she was about eight or nine years old.

In May 2021, T.P. told an adult from church about the Easter assault. She shared many of the other incidents with police in later interviews.

In June 2021, T.P.'s mother initiated a pretextual phone call with appellant in the presence of law enforcement. During the phone call, T.P.'s mother told appellant that T.P. said some "physical stuff" happened between her and him on Easter and asked him about it. Appellant told T.P.'s mother he did not remember Easter very well and eventually admitted that there was a possibility that he may have gotten an erection while wrestling with T.P. and she may have felt it from behind. He said that was the most that could have happened and denied that any penetration or intercourse had occurred.

The parties entered a written stipulation into evidence that T.P. had been molested by another family member from 2020 to 2021, and that family member had been convicted of crimes arising from that molestation and was sentenced in September 2023. T.P. disclosed this abuse to her mother before Easter 2021.

Clinical psychologist Dr. Jason Christopherson testified about CSAAS. He testified that "CSAAS is a series of patterns of behavior that children will often demonstrate or that have been observed in children who have been the victim of child sexual abuse." The concept came from a paper published by Dr. Roland Summit in the 1980's "designed to dispel common myths at the time related to how children might respond" if they were victims of sexual abuse. Dr. Summit published a follow-up article

3.

in the 1990's wherein he remarked, according to Dr. Christopherson, "it would have been better if you referred to it as … a pattern of behaviors rather than a syndrome because it seemed like too many people were assuming syndrome meant diagnosis or disease, but it's not a diagnosis." Dr. Christopherson clarified he was not testifying in order to provide an opinion about whether an alleged victim was sexually abused but rather educate about CSAAS nor was he a "person who is determining the truth or validity of something."

Dr. Christopherson explained there were five patterns of behavior that are part of CSAAS: secrecy, helplessness, entrapment or accommodation, delayed unconvincing disclosure, and recantation.

As to secrecy, Dr. Christopherson testified that child victims of sexual abuse typically keep relationships with their abuser secretive because the abuser may be threatening the child or their family members. In the case of younger children, they may be fearful of being punished, or, in the case of older children, they may be embarrassed.

As to helplessness, Dr. Christopherson testified that victims of child sexual abuse could feel helpless because they are in a situation they do not want to be in, but if they try to do something about it, bad things could happen such as someone getting hurt or going to jail. The possibility of not being believed also creates a sense of helplessness.

As for entrapment or accommodation, Dr. Christopherson testified that child victims will sometimes seek out their abuser or maintain a relationship with the abuser. They might feel trapped because they are stuck in the situation due to their helplessness.

As for delayed or unconvincing disclosure, children organize information differently than adults, and they might not remember things in a logical or linear order but instead group things together that are similar or related. For this reason, child victims may come across as unconvincing because their details do not line up, they forget whole incidents or events, or they get timelines out of order. Sometimes they also disclose to different people and tell parts of the story to the different individuals.

4.

Dr. Christopherson further testified that "it's important to recognize that CSAAS is not, like, a diagnostic process. It's not a test. It's not used in order to prove or disprove anything. It is a series of different patterns of behavior that are commonly observed in children who have been the victim of sexual abuse, but it's not a checklist either."

The defense called various family members present at the Easter gathering to testify regarding the timeline of the festivities and who was where throughout the events of the day.

Appellant also presented evidence that he had gotten into a car accident in 2010 and suffered a severe traumatic brain injury. As of 2023, a brain MRI scan showed that appellant was still suffering brain damage from the injury. A clinical neuropsychologist testified on his behalf that severe brain injuries can result in inappropriate erections and other cognitive issues.

Appellant also testified on his behalf. He denied ever touching T.P. inappropriately or in a sexual manner. He explained that he was very confused during the pretextual phone call and did not remember Easter, but he did not want to call T.P. a liar.

### Verdict and Sentencing

The jury found appellant guilty as to count 2 and not guilty as to count 1. Appellant thereafter stipulated to one aggravating circumstance—that his offenses were numerous or of increasing seriousness based on his having suffered two prior DUI convictions in 2014 and 2015. Appellant was sentenced, as stated above, to six years in state prison.

## DISCUSSION

### I.  Additional Background

In response to the People's motion in limine to admit Dr. Christopherson's testimony, defense counsel stated she had no objection to Dr. Christopherson testifying but requested an offer of proof as to which myths about child sexual abuse victims he

would be testifying about. The prosecutor explained that Dr. Christopherson would be testifying about the first four factors of CSAAS and gave a brief analysis as to how each factor related to the anticipated evidence to be presented during trial. Defense counsel responded, "I am not objecting to those four factors."

After the evidence portion of the trial concluded, the parties had a jury instruction conference off the record. On the record, the court listed all the instructions that would be given, including CALCRIM No. 1193, and no objection was made on the record.[4]

The court instructed the jury as follows:

"You have heard testimony from Dr. Jason Christopherson regarding child sexual abuse accommodation syndrome.

"Child sexual abuse accommodation syndrome is a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse.

"Dr. Christopherson's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him, nor any conduct or crimes with which he was not charged.

"You may consider this evidence only in deciding whether or not T[.P.]'s conduct was consistent with the conduct of someone who has been

---

[4] During motions in limine, a discussion was had regarding a limiting instruction that was to be read prior to Dr. Christopherson's testimony. Defense counsel did note concerns with CALCRIM No. 1193, stating that the instruction is "very confusing" and suggested that CALJIC No. 10.64 was the better instruction. The court stated it planned to read CALCRIM No. 1193 before Dr. Christopherson's testimony and at the conclusion of trial while reminding the jury of the presumption of innocence and the People's burden. Defense counsel responded, "Well, for right now, I'm just addressing the limiting instructions that the jury hears." The court replied, "We're going to have another fight about the full instruction packet." The court did not ultimately read a limiting instruction prior to Dr. Christopherson's testimony, and as stated, *post*, in the body of this opinion, there did not appear to be a renewed objection to CALCRIM No. 1193 at the jury instruction conference.

6.

molested and in evaluating the believability of the alleged victim."
(CALCRIM No. 1193.)

## II. Admission of CSAAS Testimony

Appellant claims the CSAAS testimony was unduly prejudicial under Evidence Code section 352 and should have been excluded in its entirety. Appellant contends that CSAAS evidence generally describes behavior that could equally apply to children who have been abused and who have not been abused.

### A. Appellant's Claim is Forfeited

Appellant acknowledges that his trial counsel did not object to the admission of the CSAAS evidence. Failure to object to admission of evidence below forfeits the claim on appeal. (Evid. Code, § 353, subd. (a); *People v. Jasso* (2025) 17 Cal.5th 646, 674.)

We conclude appellant's claim is forfeited and move to his contention that defense counsel provided ineffective assistance by failing to object to the admission of any CSAAS evidence.

### B. Appellant Has Not Established Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, appellant must establish that (1) the performance of his trial counsel fell below an objective standard of reasonableness and (2) prejudice occurred as a result, that is, there is a reasonable probability the defendant would have obtained a more favorable outcome. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Anderson* (2001) 25 Cal.4th 543, 569.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.

7.

All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Counsel's failure to make a futile or unmeritorious objection is not deficient performance. (*People v. Price* (1991) 1 Cal.4th 324, 387.)

Appellant has not established that failure to object to the admission of all CSAAS testimony fell below an objective standard of reasonableness. As to this point, appellant merely contends, "There was nothing to lose by making the objection." This is not adequate to meet appellant's burden to show deficient performance. To the contrary, we conclude defense counsel's performance with regard to the admission of CSAAS evidence was well-informed and effective.

In California, CSAAS testimony has consistently been deemed admissible for its limited purpose of assisting the fact-finder in evaluating the credibility of an alleged victim of child sexual abuse for decades. (See, e.g. *People v. Melgoza* (2025) 115 Cal.App.5th 632, 655–656; *People v. Lapenias* (2021) 67 Cal.App.5th 162, 172–175 (*Lapenias*); *People v. Munch* (2020) 52 Cal.App.5th 464, 468–473 (*Munch*); *People v. Perez* (2010) 182 Cal.App.4th 231, 245; *In re S.C.* (2006) 138 Cal.App.4th 396, 418; *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744–1745; *People v. Housley* (1992) 6 Cal.App.4th 947, 955–956; *People v. Harlan* (1990) 222 Cal.App.3d 439, 449–450; *People v. Stark* (1989) 213 Cal.App.3d 107, 116; *People v. Bowker* (1988) 203 Cal.App.3d 385, 393–394; *People v. Gray* (1986) 187 Cal.App.3d 213, 217–220; *People v. Roscoe* (1985) 168 Cal.App.3d 1093, 1097–1100.) Our high court has cited favorably appellate court decisions which have held expert testimony on CSAAS, or "the common reactions of child molestation victims" is admissible " 'to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior' " but is inadmissible to prove the abuse occurred. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300–1301 [analogizing the admission of CSAAS evidence to challenged testimony

regarding whether a parent might not report a known child molestation and ultimately concluding admitting the challenged testimony was not an abuse of discretion].)

Courts have recognized that CSAAS evidence is at risk of being "misapplied as a predictive index by the jury." (*People v. Bowker*, *supra*, 203 Cal.App.3d at p. 393.) Thus, the evidence must be tailored to the purpose for which it is being received; it must be "targeted to a specific 'myth' or 'misconception' suggested by the evidence" though the prosecution does not have to identify the specific misconception to be addressed. It is sufficient if the victim's credibility is placed in issue due to paradoxical behavior, such as delay in reporting a molestation or in inconsistent statements. (*Bowker*, at pp. 393–394; see, e.g., *People v. Patino*, *supra*, 26 Cal.App.4th at pp. 1744–1745.)

Here, defense counsel's decision not to move for the full exclusion of CSAAS testimony was in line with the relevant legal authority, including binding authority by our Supreme Court in *McAlpin*. Her request for an offer of proof as to which factors Dr. Christopherson would be testifying on was also in line with the well-established state of the law on admission of CSAAS.

Defense counsel's decision not to object to the first four factors of CSAAS being discussed was appropriate. The defense was that T.P.'s allegations were completely false, placing her credibility at issue. T.P. and appellant had a preexisting familial relationship, and T.P. exhibited both delayed disclosure and disclosed different alleged acts of abuse at different times. Additionally, a substantial part of the defense was to highlight issues with T.P.'s timeline of disclosure by introducing evidence she had been molested by a different family member and had a reasonable opportunity to disclose abuse by appellant but did not.[5] These circumstances made Dr. Christopherson's CSAAS testimony relevant.

---

[5]    There is also an inference to be made from the record that defense counsel did not object to the admission of CSAAS evidence for tactical reasons, as she used the CSAAS evidence coming in to bolster her argument that evidence regarding the molestation by

Finally, defense counsel mitigated any risk of undue prejudice by making several appropriate motions in limine seeking to limit Dr. Christopherson's testimony. These included objections to any testimony "inferring that the complaining witness is telling the truth or to the effect that children who say that they've been sexually abused would not lie," any statistical evidence regarding the percentage of false allegations of child molestation, and more general testimony on memory or disassociation. The discussion on the parameters of CSAAS testimony took up a significant portion of motions in limine proceedings. Dr. Christopherson's testimony was relatively brief and straightforward and limited to the four CSAAS factors agreed upon during motions in limine.

For the foregoing reasons, we decline to find any deficient performance. To the contrary, we find defense counsel's knowledge about and objections regarding the admission of CSAAS evidence to be appropriate, informed by legal precedent and practical experience, and thorough.

In his reply brief, appellant contends for the first time that the cases allowing CSAAS testimony "need to be reexamined" and "this court should find that CSAAS testimony should no longer be allowed in California." We decline to do so. Generally, we will not consider points raised for the first time in a reply brief absent a showing of good cause (*People v. Mickel* (2016) 2 Cal.5th 181, 197), and appellant has not attempted to make such a showing. Even if appellant had raised the issue earlier, we would similarly decline to address the issue. As we have stated, the *McAlpin* court expressly approved admissibility of CSAAS evidence and is binding on our court and all lower courts in this state. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see *Munch*, *supra*, 52 Cal.App.5th at p. 468, review denied Oct. 14, 2020, S264138.)

---

the other family member should come in, which the trial court appeared to consider in suggesting the parties draft a stipulation that was ultimately entered into evidence.

### III. CALCRIM No. 1193

Appellant contends that CALCRIM No. 1193 is erroneous because of its advisement that jurors may consider CSAAS testimony in evaluating complaining witnesses' believability. He contends this advisement is not consistent with case law that prescribes CSAAS admissible for explaining responses to abuse but not for evaluating whether the molestation claim is true.

Because appellant contends the challenged instruction was an incorrect statement of law and affected his substantial rights under section 1259, we will consider the merits of his claim despite his failure to object below. (See *People v. Grandberry* (2019) 35 Cal.App.5th 599, 604.) In reviewing his claim on its merits, we find no error.

We review appellant's claim de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) If a defendant contends that an instruction misstates the law, the reviewing court must view the challenged instruction " 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*Ibid.*)

Claims similar to appellant's have consistently been rejected by appellate courts. It has been held that CALCRIM No. 1193 "accurately informs the jury on the limited use of CSAAS evidence, but the instruction does not: (a) improperly allow an alleged minor victim of sexual abuse to corroborate her own testimony; (b) violate due process; or (c) misapply the burden of proof. (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 503–504 … [(*Gonzales*)]; accord, [*Munch, supra,*] 52 Cal.App.5th [at pp.] 473–474 ….)" (*Lapenias, supra,* 67 Cal.App.5th at pp. 175–176; see *People v. Page* (2025) 114 Cal.App.5th 1022, 1030 (*Page*).) We agree with these courts.

Contrary to appellant's contention on appeal that jurors would interpret CALCRIM No. 1193 as allowing them to conclude that the complaining witness was in fact abused, CALCRIM No. 1193 expressly informed the jury that CSAAS evidence "is not evidence that the defendant committed any of the crimes charged against him." As

11.

explained in *Gonzales* and more recently underscored in *Page*, "A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert's] testimony to conclude that [the victim's] behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert's] testimony to conclude [the victim] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the victim's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested." (*Gonzales*, *supra*, 16 Cal.App.5th at p. 504; *Page*, *supra*, 114 Cal.App.5th at p. 1030.)

The jurors in the present case were also instructed that the People had the burden to prove their case beyond a reasonable doubt, and the jurors were the sole judge of a witness's credibility and were not required to accept an expert's opinion as true.

Dr. Christopherson's testimony was appropriately limited. He testified he was not familiar with any of the facts of the case and did not render an opinion on whether T.P. was molested. He clarified that CSAAS was not a "diagnostic process."

The prosecutor underscored the proper use of CSAAS evidence by stating that Dr. Christopherson "didn't come [to] testify, I think he told you, to say that [T.P.] was molested. CSAAS is like an educational tool because people think that kids will testify a certain way or react a certain way or disclose a certain way. So it's very clear the testimony as to the accommodation syndrome is offered only to explain certain behavior of the alleged victim."

Significantly, the jury here did not appear to believe the majority of T.P.'s testimony given that they acquitted appellant of count 1, alleging the act of sodomy. The crime appellant was convicted of, lewd act upon a child, based upon touching rather than penetration, appeared to have been partially based on appellant's own statement that he

12.

may have had an erection while wrestling with T.P. that she might have felt.  The jury's verdict further confirms they did not improperly use the CSAAS testimony.

For the reasons set forth above, we conclude the trial court properly instructed the jury with CALCRIM No. 1193 (see *Gonzales*, *supra*, 16 Cal.App.5th at pp. 503–504 [rejecting contention that CALCRIM No. 1193 allows a jury to use CSAAS testimony as proof that the victim was molested]; accord, *Munch*, *supra*, 52 Cal.App.5th at pp. 473–474; *Lapenias*, *supra*, 67 Cal.App.5th at pp. 175–176; *Page*, *supra*, 114 Cal.App.5th at p. 1030), and appellant's constitutional rights were not violated by the instruction (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 816 [CALCRIM No. 1193 did not violate the appellant's constitutional rights]).

### DISPOSITION

The judgment is affirmed.


                                                DE SANTOS, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.

13.